# Alternatives for the Imposition of Conditions on the Certification of Drug Transit and Producing Countries

The President may impose certain conditions upon a drug producing or transit country seeking certification under section 490(b) of the Foreign Assistance Act of 1961. If he chooses to certify a country under section 490(b)(1)(B), he can withhold funds from the country to encourage compliance with a set of specified conditions. Alternatively, the President can determine not to certify a country in his annual certification report but inform the country that it might be recertified outside the annual cycle if it meets certain conditions. The first alternative offers greater flexibility to the President as, under the latter approach, the President is constrained in the exercise of his discretion by specific statutory requirements and his determination is subject to congressional review.

February 12, 1996

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

You have asked us to examine the question whether and how the President might impose certain conditions upon a drug producing or transit country seeking certification under section 490(b) of the Foreign Assistance Act of 1961. This memorandum evaluates two alternatives: (1) certification based upon "vital national interests," where the expenditure of foreign assistance funds is dependent upon the satisfaction of specified conditions; or (2) decertification and subsequent recertification once specified conditions have been met.

## Background

Section 490(b) of the Foreign Assistance Act of 1961 ("FAA"), 22 U.S.C. § 2291j(b), describes requirements for the President's annual certification of major illicit drug producing or drug transit countries. Certification avoids the cutoff of most forms of FAA assistance to such countries under section 490(e). 22 U.S.C. § 2291j(e). Under section 490(b)(1)(A), the President may certify a drug producing or transit country if it has "cooperated fully" with the United States, or has taken "adequate steps" on its own to comply with the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, *done* Dec. 20, 1988, S. Treaty Doc. No. 101–4 (1989), 28 I.L.M. 493. 22 U.S.C. § 2291j(b)(1)(A). Alternatively, under section 490(b)(1)(B), the President may certify a country that would not otherwise qualify under subsection (b)(1)(A), if he determines that such certification is in the "vital national interests" of the United States. [1] *Id.* § 2291j(b)(1)(B).

Certification under subsection (b)(1)(B) requires a description of the vital national interests involved, along with a statement balancing the risk to those national interests against the risks posed by the country's failure to cooperate with

---

[1] Hereinafter, this memorandum will refer to certifications made under sections 490(b)(1)(A) and 490(b)(1)(B) as (b)(1)(A) and (b)(1)(B) certifications, respectively.

the United States in narcotics matters. *Id.* § 2291j(b)(3). Congress may disapprove (b)(1)(B) certifications by enacting a joint resolution within 30 days of the annual certification reporting date. *Id.* § 2291j(d).

A country that is not certified — i.e. it is "decertified" — may subsequently be "recertified" under section 490(f). The President may "recertify" a country, making it again eligible for foreign assistance, in one of two ways: He may either certify the country under subsection (b)(1)(A) or (b)(1)(B) as part of his annual certification report. *Id.* § 2291j(f)(1). Or he may, at any other time, certify the country under subsection (b)(1)(B). *Id.* § 2291j(f)(2). In other words, only (b)(1)(B) recertifications — those made pursuant to the assertion of a vital national interest — may be made outside the annual certification cycle. Moreover, (b)(1)(B) recertifications made outside the annual cycle are more onerous than other (b)(1)(B) certifications. Not only must the President satisfy all other conditions for a (b)(1)(B) certification, but he must also certify either (1) that the country has undergone a fundamental change in government, or (2) that there has been a "fundamental change" in the conditions that were the basis for his prior determination not to certify. [2] *See id.* § 2291j(f)(2)(A). Thus, in effect, a (b)(1)(B) recertification made outside the annual cycle must satisfy the requirements of both subsections (b)(1)(A) and (b)(1)(B). [3]

## *Alternatives*

### 1. *Certification Under (b)(1)(B), Expenditures Subject to Conditions*

Under this alternative, the President would make a vital national interests certification under section 490(b)(1)(B) for a particular country, as part of his annual certification report. At the same time, however, he would communicate to that country that its receipt of the foreign assistance available as a result of such certification would be contingent upon the satisfaction of certain conditions. If the country met these conditions, perhaps within some specified time frame, foreign assistance funds would be released. If it did not, such funds would be withheld.

It should be noted that, under this approach, the country remains certified, even if it does not meet the specified conditions. The statute does not provide a mechanism by which a country can be "decertified" once it has been certified, other than through the annual reporting process. Thus, the only way that the President may decertify a country is by refusing to certify it the following year.

---

[2] The President need not make these additional certifications, if Congress enacts a joint resolution approving the President's decision to recertify under (b)(1)(B). *See id.* § 2291j(f)(2)(B).

[3] It appears that such recertifications are also subject to congressional review. *See id.* §§ 2291j(d), 2291j(g); 138 Cong. Rec. 28,545 (1992) (Report of House Committee on Foreign Affairs Task Force on International Narcotics Control, on International Narcotics Control Act of 1992 [subsequently enacted as Pub. L. No. 102–583, 106 Stat. 4914]) ("[S]ection 490(g) specifies congressional review procedures for recertification.").

However, the President does have considerable discretion over the expenditure of foreign assistance funds to certified countries. This discretion derives in part from his broad power over foreign affairs. The Constitution has long been interpreted to grant the President plenary authority to represent the interests of the United States in dealings with foreign States, subject only to limits specifically set forth in the Constitution or to such statutory limitations that the Constitution permits Congress to impose by exercise of its enumerated powers. [4]

Section 490 of the FAA imposes no statutory limitations on the President's discretion to withhold foreign assistance funds. On the contrary, section 490(b) states that, if the President certifies a country, foreign assistance to that country *"may* be obligated and expended." 22 U.S.C. § 2291j(b)(1) (emphasis added). The use of the word "may" rather than "shall" implies some exercise of discretion by the President in the actual expenditure of such funds. Moreover, with respect to Agency for International Development ("AID") funds, courts have recognized that the FAA imposes no impediment to the President's discretionary withholding of such funds from statutorily eligible foreign recipients. [5] *See DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 281 (D.C. Cir. 1989) (provision in AID statute granting President discretion to furnish assistance permits President to withhold AID funds from foreign nongovernmental organizations ("NGOs"): " '[A]bsent a specific limitation on the Executive's authority to condition disb[u]rsal of United States funds to foreign NGOs, it must be assumed that the Congress has left intact' presidential authority to place conditions or to refuse funding to these organizations.") (quoting *Planned Parenthood Fed'n of Am. v. Agency for Int'l Dev.*, 670 F. Supp. 538, 544 (S.D.N.Y. 1987), *aff'd in relevant part*, 838 F.2d 649 (2d Cir. 1988), *cert. denied*, 500 U.S. 952 (1991)); *Planned Parenthood* (same).

Because the President has the authority to withhold funds from countries certified under (b)(1)(B), he can use that authority to encourage compliance with a set of specified conditions. In effect, then, the President can impose upon a country that does not meet those conditions the same sanctions that decertification would entail.

---

[4] *See, e.g.*, U.S. Const. art. II, § 2, cl. 2 (President's power to "make Treaties" and to "appoint Ambassadors . . . and Consuls"); *id.* art. II, § 3 (President's power to "receive Ambassadors and other public Ministers"); *Department of Navy v. Egan*, 484 U.S. 518, 529 (1988) ("[The Supreme Court] has recognized 'the generally accepted view that foreign policy was the province and responsibility of the Executive.'" (quoting *Haig v. Agee*, 453 U.S. 280, 293–94 (1981))); *Alfred Dunhill of London Inc. v. Republic of Cuba*, 425 U.S. 682, 706 n.18 (1976) (plurality opinion) ("[T]he conduct of [foreign policy] is committed primarily to the Executive Branch."); *United States v. Louisiana*, 363 U.S. 1, 35 (1960) (The President is "the constitutional representative of the United States in its dealings with foreign nations").

[5] Whether any of the other statutory provisions covered by the definition of "United States assistance," *see* 22 U.S.C. § 2291(e)(4), contain explicit prohibitions against the exercise of executive discretion is a question we do not answer here. It is unclear whether such a prohibition, if it existed, could be interpreted to limit the President's legitimate exercise of his constitutional powers.

## 2. *Decertification and Recertification under (b)(1)(B)*

A second alternative is for the President not to certify a country in his annual certification report, but to inform the country that it might be recertified outside the annual cycle if it satisfies certain conditions. The principal difficulty with this approach, as we have already noted, is that recertification under section 490(f) is an onerous process that effectively requires a country to be able to satisfy the requirements of both (b)(1)(A) and (b)(1)(B). Moreover, recertification is subject to congressional review.

If this alternative were pursued, we would recommend that the President, at the time he submitted his annual certification report, cite the conditions for recertification as reasons for his determination not to certify a particular country. If the country subsequently met those conditions, the President would thus have set the stage to certify, under section 490(f)(2)(A)(ii), that "there has been a fundamental change in the conditions" which led to the country's initial decertification. 22 U.S.C. § 2291j(f)(2)(A)(ii).

### *Conclusion*

Of the two alternatives outlined above, the first — certification with expenditures conditioned upon satisfaction of certain requirements — offers far greater flexibility for the President. Under the second alternative — decertification with recertification upon satisfaction of certain requirements — the President is constrained in the exercise of his discretion by specific statutory requirements, and his determination is subject to congressional review.

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
